The Franklin Life Insurance Co. *v.* Sefton, Adm'r, *et al.*

THE FRANKLIN LIFE INSURANCE CO. *v.* SEFTON, ADM'R, ET AL.

INSURANCE.—*Life Insurance.—Assignment of Policy.*—During the lifetime of a person who has a policy of insurance on his own life, payable after his death to his personal representative, another person, who has no insurable interest in the life of the insured, cannot purchase said policy and take an assignment of it to himself from the insured, and hold the title thereof in himself for his own benefit.

SAME.—*Pleading.—Conclusion of Law.*—Action by an administrator upon a policy of insurance on the life of his decedent. Answer by the insurance company, showing that the insured, in his lifetime, assigned the policy to another person, and that the company indorsed upon the assignment its consent thereto. Reply, that the assignee had not any insurable interest in the life of the insured.

*Held,* that the reply averred a conclusion of law, and not matter of fact, and was therefore bad on demurrer.

SAME.—*Forfeiture for Non-payment of Premium.—Evidence. — Statements of Agent.*—A policy of life insurance, by the terms of which renewal premiums were to be paid by the insured annually on a certain day, stipulated that, "in case the first renewal premium shall not be paid at the time it becomes due, then this policy shall be absolutely forfeited;" and upon the policy was indorsed, "Agents of this company will receive premiums when due, but are not authorized in any case to make, alter or discharge contracts." The first renewal premium was not paid until fifteen days after it became due, when it was paid to a person acting as agent of the company. The insured died afterwards, during the second year. On the trial of an action on said policy, brought by the administrator of the estate of the insured, certain letters written by the secretary of said company to the widow of the insured, admitting the liability of the company on the policy, were admitted in evidence on behalf of the plaintiff, over the objection of the company, it not being shown that the secretary had authority to adjust losses, or that he was authorized by the company to write the letters, or that his act in writing them was ratified by the company.

*Held,* that the letters were not competent evidence.

SAME.—*Evidence.—Custom.*—On the trial of such action, the fact that it was the custom or usage of said company to receive payments of premiums after they were due, was not admissible in evidence on behalf of the plaintiff, to control the terms of the policy, or as affording an inference that in the case in question the premium was received by the company after it was due and that the forfeiture was thereby waived.

SAME.—*Agent.— Ratification.* — Under such a policy, the acceptance of a renewal premium by an agent of the company after it became due could not bind the company, without its ratification of the act.

From the Marion Civil Circuit Court.

*J. S. Tarkington,* for appellant.

*G. H. Chapman, U. J. Hammond, J. J. Hawes, W. Morrow, N. Trusler* and *F. Hiner,* for appellees.

WORDEN, C. J.—This was an action by the appellee William H. Sefton, as the administrator of the estate of William S. Cone, deceased, against the appellant, upon a policy of insurance issued by the appellant to said Cone, binding the appellant, for the consideration therein named, to pay to the executors or administrators of Cone, after his death, the sum of three thousand dollars, upon the terms and conditions therein specified. Hazzard and Manly were made defendants upon the allegation that they each had, or claimed to have, some interest in the policy adverse to the plaintiff, and that they were necessary parties to a complete determination of the questions involved. Manly filed a disclaimer, and as to him no question is here presented. The appellant answered, and issue was joined. Hazzard answered by way of counter claim, setting up an assignment of the policy to himself by Cone, in his lifetime, and claiming judgment for the amount thereof against the company. The issues were tried by a jury, who found for the plaintiff, Sefton, against the defendants, and there was judgment in favor of the plaintiff against the company for the amount due on the policy.

Hazzard has assigned cross errors, which we will consider first.

The cross errors raise but one question, viz.: whether Hazzard could purchase the policy from Cone and take an assignment thereof from Cone to himself, for his own benefit, so as to vest the title in himself, he not having any insurable interest in the life of Cone. This question was before us in the case of *The Franklin Life Insurance Co.* v. *Hazzard,* 41 Ind. 116, in which we decided that he could not thus take and hold the policy by assignment. We have seen nothing, since that decision was pronounced, that shakes

our confidence in the correctness of the conclusion then arrived at; but subsequent reflection has rather confirmed us in the conviction that the case was correctly decided. We do not care to add anything to what was said in that case, upon the main question. We might say, however, that after the death of the insured, there would seem to be no reason why the policy might not be transferred, by those having the right to make the transfer, to any one who might choose to purchase. Doubtless, also, a person may take a policy upon his own life, and, by the terms of the policy, appoint a person to receive the money in case of his death during the existence of the policy, as was the case in *The Provident Life Insurance, etc., Co.* v. *Baum*, 29 Ind. 236. As was said in that case, "It cannot be questioned that a person has an insurable interest in his own life, and that he may effect such insurance, and appoint any one to receive the money in case of his death during the existence of such policy. It is not for the insurance company, after executing such a contract, and agreeing to the appointment so made, to question the right of such appointee to maintain the action. If there should be any controversy as to the distribution among the heirs of the deceased, of the sum contracted to be paid, that does not concern the insurers."

This is all in entire harmony with the proposition that a party cannot take by assignment from the insured, and hold for his own benefit, a policy on the life of one in whose life he has no insurable interest.

The counsel for Hazzard claim that the case of *Hutson, Adm'r*, v. *Merrifield, Adm'r*, 51 Ind. 24, is in conflict with that of *The Franklin Life Insurance Co.* v. *Hazzard, supra.* It was not intended by the former to overrule the latter case, nor do we think the two cases are in conflict. In the former case, Mrs. Bingham had taken out a policy of insurance upon the life of her husband. She died before her husband, and the point decided was, that upon her death, her right and interest in the policy went to her heirs under the statute of distributions, and that upon her husband's death

her administrator became entitled to the money. The transfer by operation of law, upon the death of the holder of the policy, of the right of the policy, is an entirely different thing from a transfer by purchase and assignment during the life of the holder. The court said in that case, to be sure, that "the party holding and owning such a policy, whether on the life of another or on his own life, has a valuable interest in it, which he may assign, either absolutely or by way of security, and it is assignable like any other chose in action."

Such policy is, doubtless, assignable, and assignable like any other chose in action; but it is not stated in the opinion, nor does it necessarily follow from what is stated, that it is assignable to a person incapable, by reason of public policy, of receiving the assignment. It may be added that where the policy holder dies before the death of the party whose life is insured, perhaps the administrator of the holder could, for the purpose of converting the assets into money and settling up the estate in due course of law, sell the policy to any one who might choose to become the purchaser.

There is no error in the record of which Hazzard can complain.

We proceed to the consideration of the errors assigned by the appellant.

The first is, that the complaint does not state facts sufficient to constitute a cause of action.

No point is made upon this assignment in the brief of counsel for the appellant, and we discover no defect in the complaint.

Second. That the court erred in overruling the appellant's demurrer to the second paragraph of the reply to the fourth paragraph of the answer.

By the fourth paragraph of its answer, the company alleged that the policy had been assigned by Cone in his lifetime to Hazzard, and that the assignment had been consented to by the company, setting out a copy of the assignment and the consent of the company endorsed thereon.

The reply admits the assignment and the consent of the company, as alleged, but avers that said Wilbur F. Hazzard did not, when said assignment was executed, have, and has not now, and never has had, any insurable interest whatever in the life of said William S. Cone, and that said assignment was and is wholly void in law. It is objected that the replication is bad, as averring a conclusion of law, and not matter of fact.

This objection would seem to be well taken. Whether Hazzard had any *insurable* interest in the life of Cone depended upon facts which are not stated. Whether he had any such interest depended upon the law as applied to the facts; but no facts are alleged from which such conclusion is drawn. Had the pleading alleged that Hazzard had no interest in the life of Cone, it would probably have been sufficient. But the allegation is that he had no insurable interest. The pleading is pregnant with an affirmative, viz.: that Hazzard had an interest in the life of Cone, but alleges that it was not an insurable one. This must be a conclusion of law drawn from matter not stated. But we doubt whether the judgment should be reversed because the replication was erroneously held good on demurrer, inasmuch as the whole record shows that the appellant was in no manner injured by the ruling. We have seen that Hazzard filed his counter claim in the cause, setting up, against the plaintiff, his claim to the policy, and against the company, his supposed right to recover the amount thereof, and that the issues formed thereon were found against him. The judgment, it seems to us, precludes Hazzard from bringing another action against the company on the policy. But we pass this point, inasmuch as we have concluded that the judgment will have to be reversed on other grounds, and when the cause goes back, the parties, if they desire it, can probably obtain leave to amend their pleadings.

Third. The court erred in overruling the appellant's motion to strike out the second paragraph of the reply to the fourth paragraph of the answer.

We see no error in this ruling. A motion to strike out a pleading is not the proper mode of testing its sufficiency.

Fourth. The court erred in overruling the motion of the appellant to set aside the rule to answer the counter claim of Hazzard. It is claimed by the appellant that it could not be compelled to answer the counter claim of Hazzard, without being summoned to appear to it, it being substantially a new action by him. We do not think any summons was necessary. *Pattison* v. *Vaughan*, 40 Ind. 253. If it was, it did not concern the plaintiff, and any error committed in this respect, in favor of Hazzard against the company, could not affect the action of the plaintiff against the company.

Fifth. The court erred in overruling the motion of the appellant to strike out the second paragraph of the reply to the second paragraph of the answer of the company.

We see no reason for striking out the paragraph of reply mentioned.

Sixth. The court erred in overruling the appellant's motion for a new trial.

This assignment raises the important questions in the cause, as between the original plaintiff and the company.

The policy sued on bears date September 2d, 1867, and recites the payment of a premium, on that day, of the sum of sixty-two dollars and forty cents, and by its terms a like premium was to be paid by the insured on the second day of September in every year thereafter, during the life of Cone, to be paid by the hour of twelve o'clock, M., on said days. It contains the following stipulation:

"In case the first renewal premium shall not be paid at the time it becomes due, then this policy shall be absolutely forfeited."

Upon the policy was endorsed the following memorandum, viz.:

"Agents of this company will receive premiums when

due, but are not authorized in any case to make, alter or discharge contracts."

The first renewal premium, that due September 2d, 1868, was not paid before the 17th of that month, when it seems to have been paid to Edward Manly, who was acting as agent for the appellant.

Cone died in July, 1869.

On the trial of the cause, the plaintiff offered and gave in evidence the following letters from the secretary of the company, to the widow of the insured, viz.:

"INDIANAPOLIS, October 30th, 1869.

"Mrs. William S. Cone, Laurel, Indiana:

"Dear Madam, The directors desire to know, before paying the loss upon the life of your late husband, the terms of the arrangement between yourself and Mr. Hazzard. The idea of life insurance is to make provision for widows and orphans, and they feel it their duty, before paying the loss, to know how much you are to receive, as they are anxious to see that you are properly protected. Please state, also, the amount which your husband owed Mr. Hazzard. The desire of the directors is to see that you get your rights, and you will please answer this at your earliest convenience, not mentioning anything about this letter to any one.

"Very truly yours,

E. P. HOWE, Sec'y."

"INDIANAPOLIS, November 10th, 1869.

"Mrs. William S. Cone, Harrison, Ohio:

"Dear Madam, Your letter of the 3d came to hand in due time, and was very clear and satisfactory. We thought there was something suspicious in the case, and perhaps you were" (not?) "getting your rights. I think there is no question about your being entitled to the whole amount of the policy, less what you owe Hazzard and the amount he paid on the premium, with interest. Do not say anything to him, but either come up here, or send the administrator of your husband's estate, which would be better, and in conjunction with him our directors will take legal advice on

the subject, and take the proper steps to secure you the money.   We are ready to pay the loss at any time.

"Very truly yours,

"E. P. Howe, Sec'y."

These letters were objected to by the appellant on the ground, amongst other things, that they were irrelevant, incompetent, and not the act of the appellant; but the objection was overruled, and the letters admitted in evidence, and the appellant excepted.

We can discover no ground on which the letters were competent evidence for the plaintiff, and are of opinion that the court erred in admitting them.   As the renewal premium was not paid until after the time stipulated for, whereby the policy became forfeited, the letters, if competent, would have a strong tendency to show the company was liable, and therefore, inferentially, that it had received the premium after the forfeiture, and had waived the forfeiture.   The letters were not the act of the principal, the appellant, and can only be regarded as the mere statements of the agent.   There was no evidence that the adjustment of losses was within the scope of the secretary's authority, or that he was authorized by the company to write the letters, or that his act in writing them was ratified by the company.   The letters were not written in connection with, and as explanatory of, any act, whereby they might become a part of the *res gestæ.*   In short, we see no ground on which their introduction can be maintained.

In the case of *Baptist Church* v. *Brooklyn Fire Ins. Co.,* 28 N. Y. 153, it was held that the statement of the secretary of the company, made in his office on the morning after the fire, to the officers of the church, that the church was insured at the time of the fire, was not competent evidence against the company.   See, also, *Hynds* v. *Hays,* 25 Ind. 31, and *The Union Central Life Ins. Co.* v. *Thomas,* 46 Ind. 44.

In the progress of the trial, the plaintiff propounded the following question to a witness, viz.:

"Was it the custom of the company to receive payments

of premiums after they were due?" To this question the appellant objected, on the ground that it was not competent to prove the custom; that the inquiry should be limited to the facts in this particular case. The objection was overruled, and exception taken. The witness answered as follows:

"There were positive instructions given by me to the subagents, and by the authorities of the company to me, that a premium should in no case be received after it was due, unless the party was in good health, although we sometimes received payments thirty days or even sixty days after they were due, particularly when it was in town here, and I could see the parties. I know of one or two instances in which it was refused at the office, when we had knowledge of the party's bad health."

We think the court erred in the admission of this evidence. The custom or usage of the company could not be set up to control the terms of the contract between the parties. 2 Parsons Con. 546; *Atkinson* v. *Allen,* 29 Ind. 375; *Clem* v. *Martin,* 34 Ind. 341; *Rafert* v. *Scroggins,* 40 Ind. 195; *King* v. *The Enterprise Ins. Co.,* 45 Ind. 43. Nor do we think the evidence admissible as affording an inference or presumption that in this case the premium was received by the company after it was due, and the forfeiture waived. Such evidence, for such purpose, is too remote and speculative to afford any just foundation for the inference.

The court charged the jury, amongst other things, that the receipt of the premium, by the agent of the company, after it became due, would bind the company without any ratification on the part of the company. This proposition is embraced in the second and fifth charges, which need not be set out in full.

The latter part of the fifth charge is as follows:

"I have already told you the action of the agent in accepting the premium for Cone, after the day it was due, in the absence of fraud, would bind the company without any subsequent ratification by the company."

This proposition is wrong with reference to the policy sued upon. The policy contained a memorandum, as has been already stated, which was notice to the insured, that "agents of this company will receive premiums when due, but are not authorized, in any case, to make, alter or discharge contracts."

Here was abundant notice to the insured that the agent had no authority, by the receipt of the premium after it became due, or otherwise, to alter the contract by a waiver of the forfeiture. Doubtless, if the company had received from the agent and retained the premium, knowing all the facts, that would have been a ratification of the act of the agent and a waiver of the forfeiture. *The United Life, F. and M. Ins. Co.* v. *The Pres., etc., Ins. Co. of N. A.*, 42 Ind. 588. But this is not the proposition stated in the charges. We think, under such a policy as that in suit, the agent has no authority to receive the premium after it becomes due, and thereby alter the legal effect of the contract as to forfeiture in case of non-payment when due. The agent's powers in this respect are limited, and of this the insured has notice. This view is sustained by the following authorities: *Koelges* v. *The Guardian Life Ins. Co.*, 2 Lansing, 480; *Bouton* v. *The Am. Mutual Life Ins. Co.*, 25 Conn. 542; *Ryan* v. *The World Mutual Life Ins. Co.*, 41 Conn. 168; *Acey* v. *Fernie*, 7 M. & W. 150; *Catoir* v. *The Am. L. Ins. and T. Co.*, 33 N. J. L. R. 487; *Wall* v. *Home Ins. Co.*, 8 Bosw. 597.

There are some other questions discussed by counsel for the appellant, but as they may not arise upon another trial of the cause, and as this opinion has already been extended to more than usual length, we pass them over. The judgment, as between the appellant and the appellee Sefton, will have to be reversed for the reasons above given.

The judgment below in favor of the plaintiff against the insurance company is reversed, with costs, and the cause remanded for a new trial.