MUTUAL LIFE INSURANCE COMPANY OF NEW YORK *vs.* GEORGE ALLEN & another.

Suffolk.   March 21. — Oct. 24, 1884.   DEVENS & COLBURN, JJ., absent.

If an assignment is made in this Commonwealth, between parties domiciled here, of a policy of insurance issued by a company organized under the laws of another State, but delivered here, the questions of the validity of the assignment and of the capacity of the parties to contract are to be determined by the law of this Commonwealth.

If a policy of insurance on the life of another is issued to a person having an insurable interest in such life, an assignment of such policy to a person having no such insurable interest does not render the assignment void.

BILL OF INTERPLEADER, filed October 22, 1881, by a corporation organized under the laws of the State of New York, against George Allen and Catherine Fellows, to determine which of the defendants was entitled to the proceeds of a policy of insurance, issued by the plaintiff on July 25, 1855, upon the life of Israel Fellows, in the sum of $2000. The bill alleged the following facts:

By the terms of the policy it was issued " for the sole use of Catherine Fellows," and the plaintiff promised and agreed " to and with the said assured, her executors, administrators, and assigns, well and truly to pay, or cause to be paid, the said sum insured to the said assured, her executors, administrators, or assigns, for her sole use, within sixty days after due notice and proof of the death of the said Israel Fellows. And, in case of the death of the said Catherine Fellows before the decease of the said I. Fellows, the amount of the said insurance shall be payable after her death to her children, for their use, or to their guardian, if under age, within sixty days after due notice and proof of the death of the said I. Fellows, as aforesaid." The policy also contained this clause: " N. B. If assigned, notice to be given to this company." *

On January 1, 1881, Israel Fellows, Catherine Fellows, and their two children, who were then of age, by two instruments in

---

* The policy was signed by the president and secretary, but the place of signing was not stated in the policy, in the pleadings, or in the report of the case; nor did the policy state where the sum insured was to be paid.

writing under their hands and seals, duly executed and delivered in this Commonwealth, assigned and transferred the policy of insurance to the defendant Allen, together with all their respective claims and demands under the same.*

On March 7, 1881, Israel Fellows died, leaving his widow, Catherine Fellows, surviving him. Proof of his death was duly made. His widow made a demand upon the plaintiff for the payment of the policy, and brought an action upon the policy in the Supreme Court in New York.

In August, 1881, Allen also brought an action on the policy in this Commonwealth, in the name of Catherine Fellows, for his own benefit.

The answer of Allen admitted the allegations of the bill; and averred that Allen bought the policy for a good and valuable consideration.

The answer of Mrs. Fellows admitted the allegations of the bill; and averred that the assignment was invalid under the laws of the State of New York, and that Allen had no insurable interest in the life of Israel Fellows.

The case was heard by *Holmes*, J., who reported it for the consideration of the full court, in substance as follows:

The plaintiff paid the money into court. The policy was delivered by the plaintiff in this Commonwealth. At that time, and when the assignment was made, the law of New York was as set forth in the Laws of 1840, *c.* 80,† and in the cases of *Eadie* v. *Slimmon*, 26 N. Y. 1, and *Barry* v. *Equitable Assur. Society*, 59 N. Y. 587.

---

* The substance of these assignments is stated in the opinion.

† " Section 1. It shall be lawful for any married woman, by herself, and in her name, or in the name of any third person, with his assent, as her trustee, to cause to be insured, for her sole use, the life of her husband for any definite period, or for the term of his natural life; and in case of her surviving her husband, the sum or net amount of the insurance becoming due and payable by the terms of the insurance, shall be payable to her, to and for her own use, free from the claims of the representatives of her husband, or of any of his creditors; but such exemption shall not apply where the amount of premium annually paid shall exceed $300.

" Section 2. In case of the death of the wife, before the decease of her husband, the amount of the insurance may be made payable after her death to her children for their use, and to their guardian, if under age."

"The amount of premium annually paid upon the policy did not exceed $300. There was some evidence that the defendant Fellows did not expect that her assignment, although absolute in form, was to be used, except as security for a loan of $1000 to her husband; but there was no evidence which satisfied me that there was any restriction upon his power to deliver it as an absolute transfer; and I found that the policy was assigned in Massachusetts to the defendant Allen by the defendant Fellows (both being then residents of Massachusetts), in consideration of $1000 paid to her husband by said Allen, and the discharge of certain notes held by said Allen amounting to $470.79. If the transfer was valid in manner and form as agreed, Allen ceased from that moment to have an insurable interest in the life of said Fellows as a creditor, and he had no other."

The judge ruled that, so far as the present question was concerned, the transfer was governed by the law of Massachusetts, and that, by the law of Massachusetts, it was not void for want of an insurable interest in the transferee; and found for Allen.

Such decree was to be entered as justice and equity required.

*J. F. Colby*, for Allen.

*W. S. Slocum*, (*W. F. Slocum* with him,) for Mrs. Fellows.

W. ALLEN, J. The contract of insurance was made and was to be performed in this State, and the money due upon it has been paid into court here; and the contract of assignment was made in this State between parties domiciled here. The validity and effect of the assignment, and the capacity of the parties to it, must be governed by the laws of this State. The only question which requires discussion is, whether, by that law, the assignment is void for want of interest of the assignee in the life insured.

The policy, in consideration of an annual premium to be paid by Mrs. Fellows, assured the life of her husband for her sole use, and for her children if she should not survive her husband. The promise was to the assured, her executors, administrators, and assigns. The policy contained no reference to an assignment except the following: "N. B. If assigned, notice to be given to this company." The policy was issued in 1855. In 1881, an assignment in the words following, signed by Mrs.

Fellows, her husband and children (who were all of age), was indorsed upon the policy: "I hereby assign, transfer, and set over unto George Allen, of Boston, all my right, title, and interest in and to the within policy of life insurance, and all right that may at any time be coming to me thereon."

A more formal instrument of assignment, with a power of attorney to receive "all sums of money that may at any time hereafter be or become due and payable to us, or either of us, by the terms of said policy," was also executed by the same parties. The policy and assignments were delivered to the defendant Allen, and notice thereof given to the plaintiff. The consideration of the assignment was the payment of a sum of money by the assignee, and the discharge of certain notes held by him against Mr. Fellows. It is to be assumed, on the report, that the transaction was not, in the intention of the parties, a wagering contract, but an honest and *bona fide* sale of the equitable interest in the policy. The defendant Allen had no insurable interest in the life of Mr. Fellows except as his creditor, and that interest ceased when he ceased to be a creditor by accepting the assignment in satisfaction of his debt, so that he is in the position of a *bona fide* assignee of the policy for valuable consideration without interest in the life insured, and the question between him and the assignor is which has the equitable interest in the policy.

The policy is a common form of what is called life insurance, and is a contract by which the insurer, in consideration of an annual payment to be made by the assured, promises to pay to her a certain sum upon the death of the person whose life is insured. To prevent this from being void, as a mere wager upon the continuance of a life in which the parties have no interest except that created by the wager itself, it is necessary that the assured should have some pecuniary interest in the continuance of the life insured. It is not a contract of indemnity for actual loss, but a promise to pay a certain sum on the happening of a future event from which loss or detriment may ensue, and if made in good faith for the purpose of providing against a possible loss, and not as a cloak for a wager, is sustained by any interest existing at the time the contract is made. See *Loomis* v. *Eagle Ins. Co.* 6 Gray, 396, and *Forbes* v. *American*

*Ins. Co.* 15 Gray, 249.   Mrs. Fellows had an insurable interest in the life of her husband, and the policy to her was a valid contract to pay the sum insured to her upon the event of his death. This contract was a chose in action assignable by her.   *Palmer* v. *Merrill*, 6 Cush. 282.

The policy was not negotiable, and her assignment could not, in this State, pass the legal, but only the equitable, interest in the contract.   The assignment was a contract between her and her assignee, to which the insurer was not a party.   It purported to give to the assignee only the equitable interest of the assignor in the contract,— the right to recover in the name of the assignor the sum which should become due to her under the contract.

The direction in the policy, that notice of an assignment of it, should be given to the insurer, had no effect upon the character of the assignment, however its operation might have been limited had notice not been given.   The assent of the insurer to the assignment would not make a new contract of insurance. Its only effect would be to enable the assignee to enforce in his own name, instead of the name of the assignor, the rights she held under the contract.   *McCluskey* v. *Providence Washington Ins. Co.* 126 Mass. 306.

This distinction between the assignment of the interest of the insured in a policy, which is a contract between the assignor and the assignee only, and the transfer or renewal to a third person of a policy, which is a contract to which the insurer is a party, is illustrated in the case of fire insurance.   That is strictly a personal contract of indemnity to the assured, and he, or his assigns in his name, can recover only an indemnity for actual loss to him.   If he has no interest in the property insured at the time of the loss, he can recover nothing, and if he parts with his interest before a loss, he becomes incapacitated to recover upon the policy, and it ceases to insure anything and becomes void. *Wilson* v. *Hill*, 3 Met. 66.   It follows that, where a purchaser of insured property would have the benefit of an unexpired term of insurance, it must be by a new contract with the insurer, and not by assignment from the insured.   This is usually provided for in the policy, so that by its terms an assignment by the insured with the assent of the insurer will continue the policy to the purchaser ; but in such a case there is a new·

contract of insurance with the purchaser upon his newly acquired interest, and he becomes the assured. But the assured in a fire policy can, while his insurance continues, assign his rights under the policy in the same manner as the insured in a life policy can do. In *Fogg* v. *Middlesex Ins. Co.* 10 Cush. 337, Chief Justice Shaw says, after referring to the kind of transfer just mentioned: " But there is another species of assignment, or transfer it may be called, in the nature of an assignment of a chose in action; it is this: ' In case of loss, pay the amount to A. B.' It is a contingent order or assignment of the money, should the event happen upon which money will become due on the contract. If the insurer assents to it, and the event happens, such assignee may maintain an action in his own name, because, upon notice of the assignment, the insurer has agreed to pay the assignee instead of the assignor. But the original contract remains; the assignment and assent to it form a new and derivative contract out of the original. But the contract remains as a contract of guaranty to the original assured; he must have an insurable interest in the property, and the property must be his at the time of the loss. The assignee has no insurable interest, *prima facie*, in the property burnt, and does not recover as the party insured, but as the assignee of a party who has an insurable interest and a right to recover, which right he has transferred to the assignee, with the consent of the insurers." See also *Phillips* v. *Merrimack Ins. Co.* 10 Cush. 350.

If Mrs. Fellows had surrendered or forfeited her policy, and the contract between her and the insurer had become null, a new contract, by which the defendant Allen should have become the assured instead of Mrs. Fellows, might have required an insurable interest in him, though in the form of an assignment and a renewal or revival of the original policy. But the original policy has not been surrendered or forfeited, nor the contract in any way changed. Mrs. Fellows is still the assured, and the policy is supported by her interest in the life, and is in form payable to her. If the assignment is valid, it is payable to her in trust for the assignee ; if void, for her own use. In no respect can the assignment affect the validity of the contract of insurance, or taint that as a wagering policy. The only question

that can be raised is as to the assignment itself, — whether, as between the parties to it, it is void as a gaming contract.

That a right to receive money upon the death of another is assignable at law or in equity will not be questioned. The right of Mrs. Fellows, under our law, to assign the equitable interest in the policy in question is not denied; but it is contended that she can assign it only to some one who has an insurable interest in the life of Mr. Fellows. We find no reason for this exceptional limitation of the right of assignment, which would allow Mrs. Fellows to assign her policy to Mr. Fellows, or his creditors or dependent relatives, but would forbid her to pledge it for her own debts, or sell it for her own advantage. If there is any such reason, it must be found in the contract of assignment itself, and irrespective of the rule that the original contract must be supported by an interest in the life insured. That rule was satisfied. Whether a similar rule affects the contract between the assignor and assignee must depend upon considerations applicable to that contract alone.

One objection urged is, that it gives to the assignee an interest in the death of the person whose life is insured, without a counterbalancing interest in his life. It is true that every person who is in expectation of property at the death of another has an interest in his death, but it does not follow, and is not true, that the law does not allow the possession and assignment of such expectations, nor that an insurable interest is required in a life insurance for the purpose of protecting the life insured. The objection applies with equal force to the assignment of a provision made for one upon the death of another by deed or will as to the assignment of a like provision in the form of a life insurance.

The other objection urged is, that such transactions may lead to gaming contracts. This does not meet the question, which is whether such an assignment is in itself illegal as a wagering contract. Most contracts have an element of gambling in them. There is uncertainty in the value of any contract to deliver property at a future day, and great uncertainty in the present value of an annuity for a particular life, or of a sum payable in the event of a particular death, and such contracts and rights are often used for gambling purposes. The question is whether the

right to a sum of money, payable on the death of a person under a contract in the form of an insurance policy, has any special character or quality which renders it less assignable than the right to a sum payable at the death of the same person under any other contract or assurance, or than a remainder in real estate expectant on such death. We see nothing in the contract of life insurance which will prevent the assured from selling his right under the contract for his own advantage, and we are of opinion that an assignment of a policy made by the assured in good faith for the purpose of obtaining its present value, and not as a gaming risk between him and the assignee, or a cover for a contract of insurance between the insurer and the assignee, will pass the equitable interest of the assignor; and that the fact that the assignee has no insurable interest in the life insured is neither conclusive nor *prima facie* evidence that the transaction is illegal.

In England the question was raised whether the assignment of a life insurance without interest was prohibited by the St. of 14 Geo. III. *c.* 48, which forbids any insurance on the life of a person in which the person for whose benefit the insurance is made has no interest, or by way of gaming or wagering, and it was held that such an assignment was valid. *Ashley* v. *Ashley*, 3 Sim. 149. Shadwell, V. C., said, " It appears to me that a purchaser for valuable consideration is entitled to stand in the place of the original assignor, so as to bring an action, in his name, for the sum insured." The same has been held in New York, where a similar statute exists. *St. John* v. *American Ins. Co.* 3 Kern. 31. *Valton* v. *National Fund Assur. Co.* 20 N. Y. 32. It has been decided in New York that insurance on a life in which the assured has no interest is void at common law, and that the St. of 14 Geo. III. *c.* 48, so far as it prohibits such insurance, is a declaratory act. *Ruse* v. *Mutual Benefit Ins. Co.* 23 N. Y. 516. In Rhode Island, in a well-considered case, decided in 1877, a sale and assignment of a policy of life insurance to one who had no interest in the life, made, not as a contrivance to circumvent the law, but as an honest and *bona fide* transaction, was held valid. *Clark* v. *Allen*, 11 R. I. 439. In *Cunningham* v. *Smith*, 70 Penn. St. 450, a person took out an insurance on his own life, and paid for it with the money of the defendants,

intending to assign the policy to the defendants, and did so assign
it.    The assignment was sustained.    The court say that the de-
fendants may have had such an interest in the life insured as
would have entitled them to insure his life in their own name,
although this was doubtful; but that the assured had an interest
in his own life, " and if he was willing to insure himself with
their money and then assign the policy to them, there is no
principle of law which can prevent such a transaction."    This
transaction is obviously more open to objection than the assign-
ment of the interest in a valid subsisting policy.    In *Ætna Ins.
Co.* v. *France*, 94 U. S. 561, a brother procured an insurance on
his life for the benefit of his married sister, who was in no way
dependent upon him.    It was held to be valid, and that it was
immaterial what arrangement was made between them for the
payment of the premium.    In delivering the opinion of the
court, Mr. Justice Bradley, referring to the case of *Connect-
icut Ins. Co.* v. *Schaefer*, 94 U. S. 457, in which he delivered
the opinion, said: " Any person has a right to procure an in-
surance on his life and to assign it to another, provided it be
not done by way of cover for a wager policy; and where the
relationship between the parties, as in this case, is such as to
constitute a good and valid consideration in law for any gift or
grant, the transaction is entirely free from such imputation."

Several cases have been cited as deciding that any assignment
of a life policy to one who has no interest in the life is void.
We will notice them briefly.    *Cammack* v. *Lewis*, 15 Wall. 643,
and *Warnock* v. *Davis*, 104 U. S. 775, were both cases in which
the policies were taken out, by the procurement of the assignees,
in order that they might be assigned to them, under such cir-
cumstances as that they might well be held to be in evasion of
the law prohibiting gaming policies.    The remark of Mr. Jus-
tice Field in the latter case, that " the assignment of a policy
to a party not having an insurable interest is as objectionable
as the taking out of a policy in his name," was not necessary
to the decision.    In *Franklin Ins. Co.* v. *Hazzard*, 41 Ind. 116,
the assured had failed to pay the premiums, and had notified the
insurers that he should not keep up the policy.    He afterwards
assigned it for $20, the insurer assenting and receiving the
premiums.    The assignment was held void, the court saying

that such policies are assignable, but not "to one who buys them merely as matter of speculation without interest in the life of the assured." Neither of these cases decides, whatever dicta may have accompanied the decision, that all assignments without interest are illegal. The case last cited is affirmed in the case of *Franklin Ins. Co.* v. *Sefton*, 53 Ind. 380, in which Chief Justice Worden, quoting from the opinion of the court in *Hutson* v. *Merrifield*, 51 Ind. 24, — that "the party hold-ing and owning such a policy, whether on the life of another or on his own life, has a valuable interest in it, which he may assign, either absolutely or by way of security, and it is assign-able like any other chose in action," — says that it is not stated that it is assignable to a person incapable of receiving an assign-ment; and adds, "It may be added that where the policy holder dies before the death of the party whose life is insured, perhaps the administrator of the holder could, for the purpose of con-verting the assets into money and settling up the estate in due course of law, sell the policy to any one who might choose to become the purchaser."

*Missouri Valley Ins. Co.* v. *Sturges*, 18 Kan. 93, assumes and decides that the same objections lie to an assignment without interest as to an original insurance with no interest. The dis-tinction between the two transactions is not considered. *Basye* v. *Adams*, 81 Ky. 368, seems to decide, on the authority of *War-nock* v. *Davis*, *Cammack* v. *Lewis*, *Franklin Ins. Co.* v. *Hazzard*, and *Missouri Valley Ins. Co.* v. *Sturges*, *ubi supra*, that an assign-ment without interest is void as against public policy.

The case of *Stevens* v. *Warren*, 101 Mass. 564, decided in 1869, has been supposed to hold that an assignment of the right of the assured in a life policy to one who has no interest in the life, is void without regard to the circumstances and character of the particular transaction, and has been referred to in some of the cases just cited as an authority to that effect. We think that decision has been misunderstood, and that, in connection with other decisions of this court, it shows that the law in this Commonwealth accords with that laid down in *Clark* v. *Allen*, *ubi supra*.

In *Campbell* v. *New England Ins. Co.* 98 Mass. 381, decided in 1868, a policy was taken out by one Andrew Campbell

on his own life, and payable to himself and his representatives for the benefit of the plaintiff, who had no insurable interest in the life. The question of the right of the plaintiff to sue in her own name was waived, and the question considered was whether the policy could be supported for her benefit. In delivering the opinion of the court Mr. Justice Wells says : " It is the interest of Andrew Campbell in his own life that supports the policy. The plaintiff did not, by virtue of the clause declaring the policy to be for her benefit, become the assured. She is merely the person designated by agreement of the parties to receive the proceeds of the policy upon the death of the assured. The contract, (so long as it remains executory,) the interest by which it is supported, and the relation of membership, all continue the same as if no such clause were inserted. It was not necessary therefore that the plaintiff should show that she had an interest in the life of Andrew Campbell, by which the policy could be supported as a policy to herself as the assured."

The question in *Stevens* v. *Warren*, which was decided about a year later, and in which the opinion is given by the same justice, was between the representatives of the assured and of his assignee. The terms, consideration, and circumstances of the assignment are not stated ; it is only said that the defendant Warren claimed by virtue of an assignment of the policy, and that he was a purchaser of it, and had no interest in the life insured. The policy contained a provision that any assignment of it without the assent of the insurers should be void. The court held that the assignee acquired no rights under the assignment as against the representatives of the assignor, putting the decision upon both the grounds, that the assignment was prohibited by the contract of insurance, and that it was against the policy of the law against gambling policies. The court said : " The insurers are entitled to the full benefit of such a provision, as a matter of contract ; and, as the policy of the law accords with its purpose, the court will not regard with favor any rights sought to be acquired in contravention of the provision." In considering one branch of the case, the following language is used : " The rule of law against gambling policies would be completely evaded, if the court were to give to such transfers

the effect of equitable assignments, to be sustained and enforced against the representatives of the assured." That this language was not intended to apply to all assignments in which the assignee had no interest in the life, but to such only as were found or appeared to be in fact gaming transactions, is evident from what immediately follows in the opinion, in which the doctrine of *Campbell* v. *New England Ins. Co.* is adopted, and applied to assignments : " When the contract between the assured and the insurer is ' expressed to be for the benefit of ' another, or is made payable to another than the representatives of the assured, it may be sustained accordingly. The same would probably be held in case of an assignment with the assent of the insurers. But if the assignee has no interest in the life of the subject of insurance which would sustain a policy to himself, the assignment would take effect only as a designation, by mutual agreement of the contracting parties, of the person who should be entitled to receive the proceeds, when due, instead of the personal representatives of the assured. And if it should appear that the assignment was a cover for a speculating risk, contravening the general policy of the law, it would not be sustained." The assent of the insurer, if not required in the policy, must be immaterial as regards the validity of the transaction between the assignor and the assignee. If given, it would only enable the assignee to assert in his own name, instead of that of the assignor, the rights acquired by the assignment. So far as the transaction itself, apart from the circumstances attending it, is concerned, taking out a policy payable to a stranger would seem more open to objection, as a gambling transaction, than selling a policy which had acquired an actual value. As the circumstances of the transaction are not disclosed in the report, they must be supposed to have been such as to call for the decision and the remarks which were applied to them in the application of the principle laid down.

In *Palmer* v. *Merrill, ubi supra*, where the subject of assignments of the interest in a life insurance is elaborately considered by Chief Justice Shaw, there is no suggestion that any interest of the assignee in the life is necessary to support the assignment, but it is considered as an ordinary assignment of a chose in action.

In *Troy* v. *Sargent*, 132 Mass. 408, it was held that the inter-est of a wife in a policy to her husband on his life, for her bene-fit, could be taken for a joint debt of herself and husband. Could it not be taken for her sole debt, although the creditor would have no interest in the life insured? A policy of life insurance is assets which pass to an assignee in bankruptcy, and can be reached by creditors. Is it necessary, when sold by the assignee or creditor, that the purchaser should have an interest in the life insured?

The general rule laid down in *Stevens* v. *Warren,* *ubi supra,* "that no one can have an insurance upon the life of another, unless he has an interest in the continuance of that life," and from which the inference that an assignee of a party must have an insurable interest seems to have been drawn, we think, is not strictly accurate, or may be misleading. An insurable interest in the assured at the time the policy is taken out is necessary to the validity of the policy, but it is not necessary to the continu-ance of the insurance that the interest should continue; if the interest should cease, the policy would continue, and the insured would then have an insurance without interest. *Dalby* v. *India & London Assur. Co.* 15 C. B. 365, and *Law* v. *London Policy Co.* 1 Kay & Johns. 223, cited in *Loomis* v. *Eagle Ins. Co.* 6 Gray, 396. *Connecticut Ins. Co.* v. *Schaefer, ubi supra. Rawls* v. *American Ins. Co.* 27 N. Y. 282. *Provident Ins. Co.* v. *Baum,* 29 Ind. 236. The value and permanency of the interest is ma-terial only as bearing on the question whether the policy is taken out in good faith, and not as a gambling transaction. If valid in its inception, it will not be avoided by the cessation of the interest. The mere fact that the assured himself has no interest in the life does not avoid or annul the policy.

We think that the second ruling was correct, and that the fact that the assignee had no insurable interest in the life does not avoid the assignment. It is one circumstance to be regarded in determining the character of the transaction, but is not conclu-sive of its illegality.                    *Decree for the defendant Allen.*